Good morning, if you may please the court. John Ellis, Federal Defenders, on behalf of the Appellate, Mr. Gnirke. The District Court in this case imposed a special condition of supervised release which prohibits Mr. Gnirke from both possessing images containing sexually explicit conduct and also frequenting places where such materials are available. Under these circumstances, the imposition of this condition was both procedurally and substantively unreasonable. Turning first to the... Before we get to the procedural and substantive unreasonableness, do you concede that our case law makes it clear that there is no liberty interest to have child pornography? Not only this court, Your Honor, but I believe Supreme Court case law as well.  Yes, Your Honor. And what about adult pornography for someone who has been convicted of child pornography? Has this court specifically found that there's a liberty interest? That there is not a liberty interest to receive adult pornographic material where there's been previously a child molestation or a child pornography conviction. This court has found that district courts have properly imposed the condition prohibiting possession of materials of adults engaged in sexually explicit conduct. But I don't believe the court has engaged in the determination of whether or not there's a particularly significant liberty interest in the possession of the materials of adults engaged in sexually explicit conduct. And so I think that is the distinction. Obviously, Riordan, which is a plain error case, found that the district court didn't err in imposing one of those conditions. But the Riordan court wasn't asked to go through what we've asked the court to do and determine whether or not this rises to the level of a particularly significant liberty interest. Would you agree that Riordan at least, you would probably call it dicta, at least covers this case? You're just saying we need to dig a little deeper and get into the substantive and procedural reasonableness. Your Honor, I think that the problem with relying too much on Riordan is it predates Weber and Williams and the advent of particularly significant liberty interests. So, yes, there is dicta in Riordan. That is obviously bad for me. But I think that the fact that it predates the advent of this test means that that dicta isn't very strong in this case. So what does your client want to do that he thinks the conditions prohibit him from doing? A number of things, Your Honor, including depending on how broadly you read the actual condition. The condition prohibits him from having any materials that depict sexually explicit conduct. And it's not limited on its face to visual depictions. It could also include written. But even if you weren't to go that narrow when you would go and look at it as just visual depictions, he wouldn't even be able to go to places such as the movie theater if, for instance, there was a certain R-rated or NC-17 movies playing there. Right. No, I understand the examples that you've given. But can you tell me what your client specifically wants to do that the conditions prohibit him from doing and he can't talk to his, you know, his parole officer, probation officer from doing? Yes, Your Honor. I think the main thing is after 18 years in prison he wants to be able to go places and not without the fear of being put back into custody if he was to slip up and make a mistake. If, for instance, he was to go to a 7-Eleven type store to buy a cup of coffee and they sold certain magazines in there, that would fall within the prohibition in this case. And so it could result in him being put back in prison. Don't you agree, though, that our case law makes clear that there has to be a scienter, there has to be mens rea? It can't just be an accidental kind of gotcha situation. Well, it wouldn't be gotcha, Your Honor, because he would be specifically entering that establishment for the purposes of purchasing something. You know, I've heard that analogy given or that example given before, but I've never heard anybody who was arrested or whose conditions of supervised release were violated for going to a 7-Eleven store. Have you? I have not heard of that specific example, Your Honor. So what I'm asking for realistically, what we have, what does your client want to do that he can't do? Your Honor, I think also that one of the things that he would like to do is to be able to watch certain movies and have certain types of media that he otherwise wouldn't be able to have under these conditions. And so in evaluating this as under the First Amendment or under even just whether or not the procedural and substantive reasonableness, other courts that have addressed this post-2003, specifically the First, Third, and Seventh Circuits, have determined that this isn't just a throwaway type of condition that should be applied in all of these types of cases or any case involving sexual abuse of a minor or possession of child pornography. Well, this isn't a throwaway. There was a, I think it was a psychiatrist or a psychologist that examined your client in connection with his release and made a specific recommendation that he be barred from access to adult pornography because he felt it would lead him inexorably back to child molestation. Did he not? Your Honor, the discharge evaluation does have that specific recommendation. However, Mr. Nurki never actually met with that psychologist specifically, at least from the record. Is that a requirement? Well, Your Honor, I think it's different. The government bears the burden of proving the reasonableness of this condition. The evidence they chose to rely on was a psychologist who wrote a report based almost entirely on the pre-sentence report that came up. But not entirely, right? There were other folks who had met with him. There are other psychological reports in the record, right? There were, Your Honor. And wasn't a major concern his failure to participate in treatment during his incarceration? Your Honor, I think the two points on that are one is the courts where Mr. Nurki has maintained his innocence throughout and was uninterested in that. But he was convicted of the crime. And so at time of discharge, it doesn't seem to me to be unusual that that would be considered. So I want to give you a chance to respond. Absolutely, Your Honor. The second thing is that he was given specific advice by trial counsel not to discuss these things while in custody, I think for fear of being civilly committed. And so these weren't discussed. And maintaining your innocence and refusing to speak was used against him specifically. And so I don't think that that would rise to the level of the connection that was needed. Also, to the extent we're looking at the ---- I think the broader point, though, in one sense is this, is that we have overturned these types of conditions when there have been no findings at all. And here there are some findings. So this is a slightly different category of case than we've had in other cases where we've granted relief. I appreciate that, Your Honor. So just to ask the question, are you just then contending that the findings are clearly erroneous? Your Honor, the findings in this case are clearly erroneous. But more importantly, as far as the discharge evaluation, Judge Burns found that he was relying on it for the purposes of the drug use while in custody and the possession of the pornography while in custody, not the actual findings that the psychologist reached. So when we're looking at the record evidence that Judge Burns actually relied on, he wasn't relying on that advice. Well, didn't he also indicate that in his many years of experience on the bench he had found a nexus himself, the people who were addicted to child pornography and child molestation, that if they were looking at a lot of adult pornography, that it led them inexorably into the same situation? That's about what he said, wasn't it? It's slightly different, Your Honor, if I may. I think what he said is, look, I sentence a lot of clients charged or a lot of defendants charged with possession of child pornography, and a lot of them have told me that adult pornography was the gateway. And I've asked all of them who have been charged with child pornography offenses, are their hands on touching? And they've told me no. And in a few of those instances, I've been skeptical. So the judge didn't even make a finding that these people were all lying or that they've all indicated that child pornography led to hands on touching. Well, he's not required to make a finding, is he? What you've got here, you've got the psychologist, you've got additional people that examined him, you've got his refusal to participate in the classes while in prison. You've got, of course, the judge's own view. This is not just some one-off deal where it's a chart and they're just ticking it off. There was a special hearing to determine whether this was appropriate, right? There was, Your Honor. What I would say is that all the conditions probation recommended in this case are what they now call standard conditions that they ask for in these types of cases. I also see I have about a minute left. Could I reserve? Sure. Thank you very much. Sure. Good morning. Charlotte Kaiser on behalf of the United States. I just want to touch on a couple of points here. I think it's interesting that the defense had noted, appellant had noted that Reardon and Daniels had been decided by Williams. And while Williams did not directly deal with this type of condition, it did rely on the Reardon and the Bee case when it stated that Williams taking antipsychotic drugs creates an unusually serious infringement of liberty that calls for thorough consideration and justification than conditions of supervised release that this court has previously approved. And that's where it's cited to Reardon and Bee. So I think that gives us special guidance. I also think once we look at Reardon and Daniels, and I realize those are plain error cases, and there is DICTA there as the court recognized, but I think the DICTA is very telling where the courts say, well, we realize these are child pornography cases when they impose the condition and not child molestation cases. And the inference from that drawn upon that is child molestation cases are even more particularly serious given the fact that they're contact offenses. And I think extrapolating from that is really what the district court was looking at when he was making that distinction of his own experience and findings, his professional experience and findings in those cases. Other than that, I also think very telling was the fact of when Your Honor had talked about, well, what had noted the fact that he failed to participate while he was in custody, and what I just heard right now from Appellant was one of the reasons was advice maintaining innocence, but also fear of civil commitment. That to me raises a red flag, Your Honor. He chose to participate at his own peril, but for someone who maintains their innocence, another way of looking at this is the fact that maybe there's more to unravel there that we're not aware of. Right, but that wasn't what the district court relied on, so we can't go outside the four corners of what the district court said. Your Honor, yes, that is correct. The problem, I think, is in many of these cases is the overbreadth of the term sexually explicit and being in places that either have the material or, you know, it's hard to, sexually explicit is a little bit vague, and I think even if one subscribes to cable television, you're going to see that sort of material. So there is a real risk that this is an overly broad condition. How would you construe it in the context of this case? I don't see it as overly broad because of the fact that it's defined as 2256-2. Now, granted, I haven't watched Games of Thrones on HBO, but I have seen Titanic and some of those other programs, and I would be hard pressed to look at those. They're quite different, really, in the level of... So I think there is a difference. And having practiced these kinds of cases in the district court, there is a difference, especially when you're looking at the lascivious exhibition in that regard. So I do think that there is a difference. I mean, look... But how does, if you're advising a client, as your opposing counsel is, what does he tell the client to do? Do you watch Titanic or not? If you have any questions, you talk to your probation officer. And that's, I think, a lot of what the court was explaining, is that guidance to work with your probation officer and ask those questions. But to be perfectly honest, as a prosecutor, I would be hard pressed prosecuting some condition because someone was watching Titanic. Well, of course. But I mean, I think it has to be a realistic condition that's enforceable and explicit enough and reasonably related to the goals of the law that the person on supervisory release can conform to it. And I agree. And I think in that respect, I think the definition does do that. I think it is more narrowly tailored. In the other cases, the concern was that the language was not. It talked about sexually oriented or sexually simulated. I think stimulating. I think, actually, in the B case where the court upheld the condition, I think those conditions were even broader based on the evidence that I thought was very interesting compared to some of these other ones where they struck down suggestive. So I think at some point, how do you get too narrow piece by piece? And I think what the district court is saying is, look, this has worked. But if you have a problem, talk to your probation officer. Can I just ask, how were the conditions in B broader? I just have in my notes here, he was to not possess any sexually stimulating or sexually oriented material as deemed inappropriate by his probation officer or treatment staff. Or patronize any place where such material or entertainment is available. That sounds pretty comparable, but I want to make sure I'm not missing anything. I guess for me, I hold solace in the fact that sexually explicit conduct is defined by 2256-2. I take that. And that gives me a more clear-cut definition. And refresh my memory, was the statute specifically cited in the conditions of release? I believe it was, Your Honor. Because that's made a difference in a few cases. Yes, I believe it was. But if Your Honor would give me a moment just to verify that. I think last when I was... You do what, 2256-2? Is that what you're talking about? Yes, Your Honor. That specific language, if I recall correctly, has been found not unconstitutionally vague in, of course, Riordan, in Excitement Video, Inc., and in Adams. That's correct. We have specifically found that it was not unconstitutionally vague. And that's the same language, isn't it? Yes, Your Honor. You, in fact, answered the question for me about Adams. If it's in there, that's my only question, is if the statute is cited. And I don't know if it is or not. It is. It's on page 116 of the excerpt of records, Your Honor. Very good. Thank you. Thank you. Unless Your Honors have any further questions, I would submit them. Thank you. Thank you. Thank you. Your Honor, turning just very briefly to sexually explicit materials, although 2256-2 is cited in the conditions, I think it's important to remember that 2256 is really dealing with what child pornography is. And this definition was incorporated back into here, which is going to be adult pornography. I think that's why the information that is captured by citing 2256 is broader than necessary in fashioning this condition. How would you deal with Johnson, counsel? In Johnson, we said that condition of supervised release is not overbought. If it bars activities that, in quotes, bear a reasonable relationship to the risk that the defendant will return to his criminal behavior. Your Honor, I don't think this is present here for two reasons. One, Your Honor, I think as was the case in Doherty, the finding by this court that there's not necessarily a connection between pornography and touching offenses. And secondly, Your Honor, there just simply isn't a nexus. This is very different than Reardon. It's very different than B. Both of those cases involve use of the Internet, use of pornography, and committing their actual offenses. That's not present here. And for those reasons, this court should strike this condition as supervised release. Thank you both for your arguments. The case will certainly be submitted for decision.
judges: Thomas, Smith, Christen